COMMONWEALTH vs. MICHAEL RAUSEO, THIRD.

No. 99-P-375.

Suffolk. May 10, 2000. - January 10, 2001.

Present: KASS, LAURENCE, & DUFFLY, JJ.

*Abuse Prevention. Protective Order. Evidence,* Court record. *Practice, Criminal,* Presumptions and burden of proof, Required finding. *Intent. Probate Court,* Divorce.

This court concluded that, in a prosecution for violation of an abuse prevention order under G. L. c. 209A, in which the trial judge properly admitted in evidence a certified copy of the order issued by the Probate and Family Court, the burden was on the defendant to present to the trier of fact claimed discrepancies resulting from modifications to the order. [702-704]

Evidence at the trial of a complaint for violation of an abuse prevention order under G. L. c. 209A was sufficient to warrant the denial of the defendant's motion for a required finding of not guilty. [704-705]

There was no merit to a criminal defendant's claim that multiple oral and written modifications to the G. L. c. 209A abuse prevention order he was accused of violating rendered the restrictions on his conduct ambiguous. [705]

A judge's oral order was not effective to modify a previously issued restraining order under G. L. c. 209A. [705-706]

Discussion of the extent to which an order issued by the Probate Court in a related proceeding affects existing G. L. c. 209A orders in that court and other courts. [708-711]

Where an order of a probate judge in a divorce proceeding did not specifically provide that it was intended to modify an existing 209A abuse prevention order, it did not modify the abuse prevention order. [706-708, 711]

COMPLAINT received and sworn to in the Boston Municipal Court Department on January 9, 1998.

The case was heard by *Raymond G. Dougan, Jr.,* J.

*Mark G. Miliotis* for the defendant.

*Jennifer M. Davis,* Assistant District Attorney, for the Commonwealth.

DUFFLY, J. A judge of the Boston Municipal Court, sitting without a jury, convicted the defendant of violating orders

entered in a G. L. c. 209A (abuse prevention) proceeding commenced by his then-wife in the Probate and Family Court, and imposed a one-day probation. The defendant appeals from the denial of his motion for a required finding of not guilty. He also claims that the trial judge erroneously admitted in evidence a certified copy of the 209A order because it did not reflect accurately the terms of the order at the time of the alleged violation. For reasons set forth in *Smith* v. *Joyce*, 421 Mass. 520, 521 (1995), we do not consider the defendant's claims to be moot, and affirm the judgment. See *Wooldridge* v. *Hickey*, 45 Mass. App. Ct. 637, 638 (1998).

1. *Background facts and proceedings.* Based on the evidence, the trial judge could have found that at about 10:30 P.M. on June 27, 1997, the defendant left his car at the side of the street in front of the entrance to the wife's home and rang the doorbell. Over an intercom, by which the wife had answered, the defendant asked to be let in to see his son. The wife responded that he was sleeping and asked the defendant to leave. Minutes later, the doorbell rang again; it was the defendant, who repeated his request to see his son and demanded that the wife bring the boy to the door. The wife told the defendant she would call the police if he did not leave. Observing that the defendant remained outside the building, the wife called the police, who arrived soon afterward. The defendant left before speaking to the police. The trial judge concluded that these acts were prohibited by the 209A restraining order then in effect.

An ex parte restraining order first issued on April 17, 1997, when, concurrent with the filing of a complaint for divorce in the Probate and Family Court, the wife also filed a complaint in that court under G. L. c. 209A, seeking an abuse prevention order against the defendant. The probate judge issued a temporary order on the printed form which the courts have adopted for that purpose. The order restrained the defendant from abusing his wife by harming, threatening or attempting to harm her physically or by placing her in fear of imminent physical harm; restrained the defendant from contacting the wife in person, by telephone, in writing or otherwise; and ordered the defendant to remain at least twenty yards away from her. He was further ordered to stay away from the wife's residence and workplace. This order continued in effect until April 23, 1997, when, after notice to the defendant, the parties appeared at a hearing in the Probate Court. Following hearing the order was

modified and, as modified, was extended for one year to April 23, 1998. Those modifications and a further modification made on May 15, 1997, which we discuss in greater detail below, provided for visitation between the defendant and his minor son and lessened to some degree the restrictions on the defendant's behavior, but kept in place orders prohibiting the defendant from abusing the wife and from having in-person contact with her, and requiring that the defendant stay away from the wife's residence and workplace.

2. *Admission of certified copy of c. 209A order.* We first consider the defendant's claim that the trial judge should not have admitted in evidence the certified copy of the 209A order offered by the Commonwealth, because that document did not reflect the orders in place at the time of the alleged violation on June 27, 1997.

The front page of the printed order admitted in evidence (exhibit one), and included as part of the record appendix submitted with the case on appeal, is a copy of that page of the order as it was first issued on April 17, 1997, and does not reflect the emendations made to it on April 23, 1997, and May 15, 1997. The defendant argues that, having called the trial judge's attention to the fact that the order offered in evidence did not reflect all of the emendations as of June 27, it was not his burden, but rather the Commonwealth's, to establish what the emendations were. We disagree.

That there were modifications on those dates appears from the second page of exhibit one. The modification on April 23, 1997, was, as noted on page two in the space provided, "Per order entered this date on visitation and any subsequent orders (Item #8 added)."[1] It is not disputed that the order to which the handwritten notation on the form refers is a separately issued order dated April 23, 1997.[2] That order allowed the defendant access to certain of his belongings during a specified period of

[1] Item number 8, located on the front page of the form, contains the pre-printed text: "Visitation with the children listed in section 6 is permitted only as follows (may be ordered by Probate and Family Court only)." On page one of exhibit one, no additional language is inserted in the space that follows the preprinted text. See note 5, *infra.*

[2] Although the April 23, 1997, order contains the divorce docket number (97D 0862-D1), a number that differs from that designating the 209A proceeding (97D 0862 AB1-C), the April 23, 1997, order is incorporated by reference in the 209A printed order, which is docketed on the separate 209A docket sheet. See note 6, *infra.* As we discuss later in this opinion, whether an

time on a specific date; awarded physical custody of the parties' minor child to the wife until May 15, 1997; and allowed the defendant to have supervised visitation with the child, which was to be coordinated by the defendant's parents. Financial statements were ordered to be exchanged, and a hearing on support and related issues was scheduled for May 15, 1997.

That there was a further modification of the 209A order on May 15, 1997, is also indicated on page two of exhibit one, beneath the modifications made on April 23. In the area designated as "Prior court order modified," the appropriate boxes are marked with an "X," indicating that the defendant and the plaintiff appeared at the hearing. In the space provided is a judge's signature and the date "5/15/97." Following the preprinted text indicating that the prior order dated "4/23, 1997 shall be modified as indicated below," is this handwritten notation: "By amending item #2 and modifying item #8." No modifications to either item number 2 or 8 are reflected on page one of exhibit one.[3] Testifying on cross-examination, the wife stated that on May 15, "There was a modification, but I've never seen it in writing, for telephone contact."

As proof of a valid order, the Commonwealth offered exhibit one, a copy of the 209A order that had been certified as "a true copy" by the Probate Court. See G. L. c. 233, § 76; Mass.R. Crim.P. 40(a)(1), 378 Mass. 917 (1979) ("An official record kept within the Commonwealth . . . when admissible for any purpose, may be evidenced by . . . a copy attested by the officer having legal custody of the record"). Such a copy is presumptively valid and accurate. See, e.g., *Barry* v. *Commonwealth*, 390 Mass. 285, 289 & n.7 (1983), *S.C.*, 397 Mass. 718 (1986) (docket entries are prima facie evidence of the facts recorded therein; if docket is inaccurate, it is parties' burden "to bring the discrepancy to the attention of the court" [citing Mass. R.Crim.P. 42, 378 Mass. 919 (1979)]).[4] Compare *Rand* v. *Han-*

---

order is entered in the divorce or in the abuse prevention proceeding is not without significance.

[3]See note 5, *infra*.

[4]Mass.R.Crim.P. 42 provides, in relevant part, "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time . . . on the motion of any party . . . ."

See the Reporters' Notes to the rule: "Rule 42 is limited to the correction of 'clerical mistakes' or errors 'arising from oversight or omission' and does

*son*, 154 Mass. 87 (1891) (presumption in favor of the validity of a judgment rebutted by other evidence).

We do not think it unfair to place upon the defendant the burden of alerting the trial judge to the substance of any claimed discrepancies resulting from modifications to the order, notice of which must have come to the defendant's attention when the order was served on him (he does not claim a lack of service). Indeed, it is apparent from the transcript of the proceedings that the defendant's attorney was aware that the May 15, 1997, modification "would have been the telephone contact." The attorney further stated, "And I suggest most respectfully that there's an exculpatory May 15th order, 1997, which is consistent with the evidence that's before Your Honor because the [wife] has testified that the judge did, in fact, orally alter the order."

Generally " '[a] presumption which shifts to the defendant the burden of persuasion on an element of the Commonwealth's case is constitutionally impermissible . . . .' *Mullaney* v. *Wilbur*, 421 U.S. 684, 703-704 (1975)." *Commonwealth* v. *Claudio*, 26 Mass. App. Ct. 218, 220 (1988), *S.C.*, 405 Mass. 481 (1989). Nevertheless, there are circumstances in which "the burden is on the defendant to come forward with evidence of the defense." *Commonwealth* v. *Jones*, 372 Mass. 403, 406 (1977). "[I]n casting the production burden on the defendant in a criminal case" the " 'limits of reason and fairness [dictate that] . . . the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression.' Such a shift may be proper if there is a 'manifest disparity in convenience of proof and opportunity for knowledge . . . .' " *Id.* at 408, quoting from *Morrison* v. *California*, 291 U.S. 82, 88-89, 91 (1934). In Massachusetts, cases in which such a burden has been imposed on the defendant in a criminal matter include *Com-*

---

not apply to the correction of errors of substance, such as an illegal sentence or improperly obtained conviction." Reporters' Notes to Mass.R.Crim.P. 42, Mass. Ann. Laws, Rules of Criminal Procedure, at 209 (West 2000). Nor does it apply to errors "result[ing] from deliberate action" (citations omitted). *Ibid.*

"The term 'record' is intended to be broadly read so as to encompass . . . evidentiary documents . . . and all other matters pertaining to the case of which there is a written record." *Ibid.*

monwealth v. Douzanis, 384 Mass. 434, 443 (1981) (in attacking factual basis of affidavit in support of search warrant, burden is on defendant to make a "substantial preliminary showing" that the affiant made an "intentional or reckless misstatement in the affidavit"); Commonwealth v. Lopez, 426 Mass. 657, 661-662 (1998) (in the absence of a contemporaneous or reconstructed record of a plea colloquy, burden is on defendant to produce evidence rebutting presumption of regularity in court proceedings); Commonwealth v. Hampton, 26 Mass. App. Ct. 938, 940 (1988) (under G. L. c. 278, § 7, burden of establishing existence of valid firearm license is on the defendant). See United States v. Cortellesso, 663 F.2d 361, 364 (1st Cir. 1981) (government's prima facie case that tape recording of intercepted telephone calls was authentic and accurate must be rebutted by defendant with more than "hypothetical possibilities that tampering occurred") (citations omitted). There was no error in the trial judge's admission of the order.

3. Motion for required finding of not guilty. The defendant argues that both oral and written modifications were made to the original 209A order that permitted the conduct complained of. Alternatively, he argues that the modifications rendered unclear the restrictions which the order placed on his actions, and that he therefore did not have the requisite knowledge of the order necessary to sustain a conviction. He asserts that written modifications were made on April 23, 1997, May 15, 1997, and June 2, 1997, and are reflected on the 209A form of order (although not, as we have discussed, on page one of the copy in evidence), and in separate orders issued by the probate judge on those dates.

As we discuss below, the only modifications to the 209A order which were made as of June 27, 1997, occurred on April 23, 1997, and on May 15, 1997. On the record before the trial court, there was evidence that a 209A order issued on April 17, 1997, which was thereafter extended to April 23, 1998; that provisions in this order prohibited the defendant from contacting the wife and required that he stay away from her residence; and that the defendant was present at the hearings on April 23, 1997, and May 15, 1997, when the orders were extended and modified.

In order to establish that the defendant violated a restraining order issued pursuant to G. L. c. 209A, § 7, the Commonwealth must prove that (1) there was a valid restraining order; (2) the

defendant knew of the order; and (3) the defendant violated the order. *Commonwealth* v. *Silva*, 431 Mass. 401, 403 (2000). Viewing the evidence in the light most favorable to the Commonwealth, *Commonwealth* v. *Coonan*, 428 Mass. 823, 828 (1999), a valid restraining order was in effect on June 27, 1997, which required that the defendant refrain from contacting the wife in person, and ordered that he stay away from the marital home. The defendant had knowledge of this order when, on June 27, he went to the wife's residence and engaged in the conduct we have earlier described. The evidence was sufficient to withstand the defendant's motion for a required finding of not guilty.

a. *Claim of ambiguity resulting from multiple modifications.* The defendant claims that the issuance of multiple oral and written modifications to the original 209A order rendered ambiguous the restrictions on his conduct and that he therefore lacked both the knowledge and intent required to convict him. He relies, erroneously, on *Commonwealth* v. *Brogan*, 415 Mass. 169, 171 (1993), quoting from *Furtado* v. *Furtado*, 380 Mass. 137, 145 (1980), to support his claim that it was the Commonwealth's burden to establish that "the defendant clearly and intentionally disobeyed the order in circumstances in which he was able to obey it." While such intent is an element of a criminal contempt action, it is not an element of the statutory violation of a restraining order here at issue. *Commonwealth* v. *Delaney*, 425 Mass. 587, 596-597 (1997), cert. denied, 522 U.S. 1058 (1998). See *Commonwealth* v. *Collier*, 427 Mass. 385, 387-388 & n.4 (1998).

The defendant's argument as to lack of knowledge fails because even the most permissive order entered by the Probate Court (see discussion of June 2, 1997, order, *infra*) did not allow him to engage in the conduct for which he was convicted. Notwithstanding the defendant's failure to establish any basis for confusion as to whether his actions of June 27, 1997, were permitted, we take this opportunity to discuss the extent to which an order issued by the Probate Court in a related proceeding affects existing 209A orders in that, and other, courts.

The defendant claims that, in addition to the orders entered on April 17, 1997, and May 15, 1997, as reflected on the "complete" 209A form of order, and in the separate written order issued by the Probate Court judge on April 23, 1997, oral orders issued from the bench, perhaps on May 15, 1997, or on

other, unspecified dates, which modified the 209A order. He also claims that a separate, written order issued by the probate judge on June 2, 1997, further modified the 209A order.[5]

b. *Oral modification.* The defendant contends that oral modifications to the restraining order allowed him and the wife to transmit financial documents back and forth via facsimile, to meet to attend counseling, to appear at a deposition together, and to speak on the phone to discuss business litigation or their child. Oral orders, if they were made, would not have been effective to modify the restraining orders issued pursuant to c. 209A, which contemplates that orders be transmitted, in written form, to law enforcement agencies and to the defendant. See G. L. c. 209A, § 7; *Commonwealth* v. *Delaney,* 425 Mass. at 590. Moreover, had those modifications been made in writing as required, they would not have affected the prohibition against in-person contact or the requirement that the defendant stay away from the wife's residence.

c. *The June 2, 1997, order.* Following the parties' appearance in Probate Court on April 23, 1997, in connection with the 209A proceeding, the defendant filed a motion in the pending divorce action,[6] dated May 8, 1997, in which he sought "defined rights of visitation with minor child." In that motion, he

---

[5]As noted in section 2, *supra,* the defendant failed to provide copies of the page missing from exhibit one, which he claims supports his position. The amended first page of the 209A order, and a copy of the Probate Court docket in connection with the 209A proceeding, are included in the defendant's record appendix filed in connection with his appeal from the judgment of the Probate and Family Court, *Rauseo* v. *Rauseo, post* 911 (2001). These documents do not supply "an essential element of proof" of the crime with which the defendant was charged. *Commonwealth* v. *Green,* 408 Mass. 48, 50 (1990). We draw upon the record in *Rauseo* v. *Rauseo, infra,* only to illustrate more clearly the complexities of procedure in cases involving both 209A orders and divorce and visitation, and not to reach our conclusions as to the merits of the defendant's appeal in the case at bar. In this connection, we note that, on the front page of the 209A order as appearing in the record appendix of *Rauseo* v. *Rauseo, infra,* at paragraph 2, which restrains the defendant from contacting his wife, the words "by telephone" have been crossed out, i.e., telephone contact was to be allowed. This emendation is also reflected by the addition at paragraph 8 (the visitation provision) of the words "including reasonable telephone contact," and the words, "per order," written in a different hand. We note parenthetically that, as the complaint against the defendant did not involve telephone contact, the page missing from exhibit one would not have aided his defense.

[6]That the motion was in connection with the parties' divorce, and was not a request to further modify the 209A order, appears from the substance of the

requested that "[f]or so long as there is a restraining order in effect prohibiting contact between the parties," the wife be ordered to have a "suitable person available . . . to deliver the child to the Defendant in his automobile on the street" for visitation purposes; and that he be allowed visitation on Tuesday and Thursday evenings from 5:30 P.M. until 9:30 P.M., and every other Sunday from 9:00 A.M. until 5:00 P.M. On June 2, 1997, the same probate judge who had heard the parties on May 15, 1997, in connection with the further modification to the 209A order, allowed the defendant's motion by endorsing it. The probate judge issued a separate written order, also dated June 2, 1997, in which he allowed visitation in accordance with "the schedule . . . and on the terms set forth" in the motion; awarded the parties shared legal custody, and the wife sole physical custody, of the minor child; provided for the sharing of medical expenses and issued orders governing various financial issues; appointed a guardian ad litem; and temporarily restrained the disposition of certain assets. The order also provided that the "[p]arties may agree to refinance any current obligations," and that "the defendant shall account quarterly to the plaintiff" with respect to certain of the parties' investments.

Relying on *Smith* v. *Joyce*, 421 Mass. at 524[7] (for the proposition that "in the Probate and Family Court a judge could issue a G. L. c. 209A order and at the same time make any appropriate conforming change in an outstanding custody . . . order"), the defendant maintains that the June 2, 1997, written order issued in the divorce litigation wrought further modifications of the 209A order, and that such modifications left unclear the manner in which his contact with the wife was prohibited or restricted. Specifically, he argues that he believed he was entitled to deliver to the wife certain financial documents and that, as he also testified at trial, this was his mission when he rang the wife's doorbell on the evening of June 27. However, as noted, *supra*, the order did not provide for any in-person contact concerning financial matters. Rather, at best, the defendant was permitted to wait in his car at the curb to pick up and deliver

motion, the docket number (97D 0862-D1, designating the divorce action), and its absence from the 209A docket sheet. See note 5, *supra*.

[7]That case involved a 209A proceeding that had been brought in the Probate Court after that court had previously entered a divorce judgment involving the same parties. There the court noted that "[a] Probate and Family Court . . . may issue and modify custody . . . orders." *Smith* v. *Joyce*, *supra* at 523.

his son for visitation purposes. There was no basis for the defendant's belief that the June 2 order allowed him to ring the wife's doorbell at 10:30 P.M. on a Friday evening for any purpose whatsoever.[8] Moreover, as we explain below, the June 2 order did not have the effect of modifying the 209A order then in effect.

The statutory grant of power to the Probate and Family Court in the context of a 209A abuse prevention proceeding is greater, with respect to custody and support issues, than that of other courts sharing 209A jurisdiction.[9] A modification of a custody or visitation order in a separate action (including, as here, for divorce) does not, however, operate to modify orders in a 209A proceeding which were entered to protect a plaintiff from that defendant's abuse. That is, an order to modify a preexisting c. 209A order must be express and, of course, in writing. *Smith* v. *Joyce*, 421 Mass. at 524, is not to the contrary. See § 12:07 of the Guidelines for Judicial Practice: Abuse Prevention Proceedings (June 1997) (modification of Probate Court 209A orders); *id.* at §§ 6:06, 13:00 (power of Probate Court to modify inconsistent non-Probate Court 209A orders).

In 1978, the Legislature adopted an act to provide protection to those who suffered from abuse at the hands of a family or household member. G. L. c. 209A, §§ 1 et seq., as inserted by St. 1978, c. 447, § 2. The statute invested the Superior, Probate, and District Courts, and subsequently the Boston Municipal Court (St. 1983, c. 678, § 2), with jurisdiction to conduct abuse prevention proceedings. Those courts are empowered to issue orders that prohibit a defendant from abusing the plaintiff or order the defendant to refrain from contacting the plaintiff or to

---

[8] Although he does not adequately argue the point, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), we note also that the April 23, 1997, order did not permit the conduct for which the defendant was convicted. In pertinent part, the April 23 order allowed the defendant access to the property to remove his belongings on April 26, 1997, from 1:00 P.M. to 5:00 P.M.; provided that financial statements would be exchanged "between counsel" by May 8, 1997; and between April 23 and May 15, 1997, provided him visitation with his son "coordinated by and in the presence of the [defendant's] parents."

[9] See G. L. c. 209A, § 3, tenth par., as amended by St. 1990, c. 403, § 3 ("If there is a prior or pending custody [or] support order from the probate and family court department of the trial court, an order issued in the superior, district or Boston municipal court departments of the trial court pursuant to this chapter may include any relief available pursuant to this chapter except orders for custody or support").

vacate and stay away from the plaintiff's home or workplace. G. L. c. 209A, § 3(*a*), (*b*), (*c*). In addition, courts may also award temporary custody of a minor child to the plaintiff (§ 3[*d*]), and order that the defendant pay temporary support (§ 3[*e*]), so long as there is no "prior or pending custody [or] support order from the probate and family court." See G. L. c. 209A, § 3, tenth par. If there is such a preexisting order of the Probate and Family Court, the Superior, District, and Boston Municipal Courts must abstain from making orders concerning custody and support. *Id.*

Although, pursuant to c. 209A, § 3, fourth par., each such court "may modify its [209A] order at any subsequent time upon motion by either party," only the Probate Court has the power to supersede the custody and support provisions contained in the 209A orders of other courts. G. L. c. 209A, § 3, eleventh par.[10] This provision reflects that, apart from the emergency protective provisions of c. 209A, decisions regarding a parent's care, custody and maintenance of children are exclusively the province of the Probate and Family Court.[11]

The provision in c. 209A, § 3, eleventh par., does not provide for automatic supersession of the protective provisions of a 209A abuse prevention order upon the issuance of an inconsistent visitation order issued in, for example, a divorce or paternity action. Rather, to supersede the protective provisions of another court's 209A order, the Probate Court must modify that other court's abuse prevention order by entering the modification on

---

[10]General Laws c. 209A, § 3, eleventh par., as amended by St. 1990, c. 403, § 3, provides in relevant part: "If the parties to a proceeding under this chapter are parties in a subsequent proceeding in the probate and family court department for divorce, . . . custody or support, . . . any custody or support order or judgment issued in the subsequent proceeding shall supersede any prior custody or support order under this chapter."

[11]In 1986, the Probate Court was granted exclusive jurisdiction over divorce proceedings, St. 1986, c. 462, § 3, which include most care, custody, and maintenance proceedings. See G. L. c. 208, §§ 28, 29, 31A. See also G. L. c. 209, § 37; G. L. c. 209C, § 3; G. L. c. 215, § 4. Chapter 209A contains no language authorizing courts to enter visitation orders; only the Probate Court, in actions related to divorce, separate support, or paternity, may enter orders providing for visitation. See, e.g., G. L. c. 119, § 39D (grandparent visitation); G. L. c. 208, § 31A (divorce visitation in context of abuse); G. L. c. 209, § 37 (separation visitation); G. L. c. 209, § 38 (visitation where there is abuse); G. L. c. 209C, § 3 (paternity visitation).

the 209A form of order.[12] See §§ 6:06, 13:00 of the Guidelines for Judicial Practice, *supra.* Cf. *Smith* v. *Joyce,* 421 Mass. at 523-524. General Laws c. 209A, § 3, eleventh par., does, however, enable a judge of the Probate Court to issue a custody or visitation order in a divorce action which has no impact on a "no abuse," "no contact," or "stay away" provision in a 209A order, without the necessity of modifying the 209A order.[13] Finally, of course, if, as here, the 209A complaint is brought in the Probate Court, where another action is filed or is pending in which custody and visitation are dealt with, the probate judge is empowered to issue conforming orders in both the 209A action and the other proceeding in the Probate Court. *Id.* at 524. See § 12:07 of the Guidelines for Judicial Practice, *supra.* If orders entered in a 209A proceeding and another action in the Probate Court are inconsistent, the protections afforded by the 209A order will take precedence over orders for custody or visitation entered in the other proceeding. See *id.* ("A c. 209A order entered by the Probate and Family Court must be modified when a subsequent custody or visitation order is entered by the Probate and Family Court which conflicts with the c. 209A order. All orders must be consistent").[14] As with the modification of other courts' 209A orders, a modification of a 209A

---

[12]This requirement does not preclude a probate judge from also entering a separate, written order setting forth additional provisions which do not fit in the space provided for this purpose on the printed form. However, such an order must be specifically referenced in the 209A form of order, as was done here on April 23, 1997. In addition, we suggest that such separate, written order contain a clear legend identifying it as an order which is incorporated in, and intended to modify, the 209A order. Further, to the extent that the separate order affects the protective provisions of the 209A order, such separate order must accompany that 209A order when transmitted pursuant to G. L. c. 209A, § 7.

[13]For example, a District Court judge could enter an initial 209A order that awards custody to the mother and orders the father to stay away and have no contact with her. If in a subsequent divorce action a Probate Court judge awarded custody to the father, that order would supersede the District Court's custody order. That the father could not personally retrieve the child from the mother's home would not diminish the effectiveness of the custody order.

[14]Compare Commentary to § 6:06 of the Guidelines for Judicial Practice, *supra,* noting that if, in a subsequent action in the Probate Court, orders concerning custody or visitation are issued that would affect the protective provisions of an existing 209A order issued by a non-Probate Court, but the existing 209A order is not modified by the Probate Court judge, then the Probate Court's order "will not supersede the original court's no-contact order, which will still be in effect. . . . [I]f the protective order forbids

order initially issued by a Probate Court must be entered on the 209A form of order. See note 12, *supra*.

The June 2, 1997, order entered by the probate judge did not specifically provide that it was intended to modify the existing 209A order; it was not referenced in the 209A order as a modification; and it did not contain provisions which were inconsistent with the protections granted by the 209A order. The Probate Court order of June 2, 1997, did not, therefore, modify the 209A abuse prevention order.

*Conclusion.* There was no error in the admission of exhibit one (the certified copy of the 209A order), and there were no written orders that allowed the defendant to engage in the conduct for which he was convicted. We therefore affirm the judgment.

*So ordered.*

---

contact, the defendant will be subject to the possibility of immediate arrest upon arrival at the plaintiff's residence to pick up the child for visitation, notwithstanding a Probate and Family Court order purporting to allow the defendant to go to the home."